## Case No. 15,112.

### UNITED STATES v. FIVE CASKS OF FILES.

[3 Hunt, Mer. Mag. 439.]

District Court, S. D. New York. Oct., 1840.

VIOLATION OF CUSTOMS LAWS—FALSE INVOICES—
FORFEITURE OF GOODS—INTENT—WHO
ARE MANUFACTURERS.

[1. The tariff law contemplates two classes of importers,—purchasers, and those who procure otherwise than by purchase. In their invoices the former class are to represent the actual cost of the goods, the latter, the actual market value.]

[2. A purchaser whose invoice truly states the actual cost is not subject to any forfeiture for this cause, although the valuation may be raised by the customs officers for the purposes of imposing the duty.]

[3. In the strict sense a "manufacturer" is the artisan by whose skill and labor the raw material is formed into an article prepared for sale or use; but, in a broader sense, and for the purposes of the tariff laws, a manufacturing importer is one who controls, directs, or superintends the artisans, or who is the general head or proprietor of an establishment in which articles are manufactured.]

[4. In determining whether a certain house in Sheffield, England, which imported certain packages of files into this country, were to be regarded as purchasers or as manufacturers, for the purpose of invoicing their goods, it appeared that, according to a practice in Sheffield, they did not themselves manufacture the files, or have them manufactured in a factory owned and controlled by themselves, but that they purchased and owned the steel bars from which the files were made, and placed them in the hands of makers of files, charging the steel to them, and crediting the files, when received back, in cash, and paying cash for the balance. *Held* that, if this charging and crediting was a mere form, while the steel bars and files remained the property of the importers, they were to be regarded as manufacturers; but if, when the steel was delivered, it belonged to the file makers, so that they might sell it, or the files made from it, to whom they pleased, then the importers were to be regarded as purchasers.]

[5. If, under this course of dealing the importers, under a misapprehension of the law, supposed themselves to be purchasers, when in fact they were manufacturers, and under this supposition invoiced the goods at the cost price, as in case of an actual purchase from the file makers, and such invoicing tended to evade or defraud the revenue, then an intent to defraud must be imputed to them, so as to require a forfeiture, though they in fact had no such intent.]

This was an information against merchandise, to obtain its forfeiture on several allegations: (1) That the goods, being procured otherwise than by purchase, were not invoiced at their actual value at the time and place where procured. (2) That the invoices were undervalued. (3) That by the invoice the goods were represented as owned by Joseph Ellison, who was not the owner, and that in each particular the invoice was made up with intent, by a false valuation, extension, or otherwise, to evade or defraud the revenue; contrary to section 4 of the act of May 28, 1830 [4 Stat. 410]. The goods were claimed by Joseph Ellison as

consignee, who traversed the causes of forfeiture. The invoices were produced in evidence, and were made up with this heading: "Jos. Ellison bought of Wilson, Hawkshurst & Moss," and dated at Sheffield, in February, 1839. It was admitted that Ellison was only a consignee of the goods for sale, for the house of Wilson, Hawkshurst & Moss. The latter were extensive dealers in cutlery and steel at Sheffield. It appeared that the course of the trade in files at Sheffield was to sell by a tariff of printed prices, established some time ago, and the price at this time was designated by rates of discount from the tariff. The customhouse appraiser, on examination, reported the discounts in the invoice to be greater than the actual current prices at Sheffield; in some articles, ten per cent., in others seventeen, in others twenty, and, on an average, twelve per cent. Upon this the goods had been seized. Invoices of Wilson, Hawkshurst & Moss to other dealers in New York were produced at discounts confirming the appraiser's judgment. Some of the articles were marked with the name of W., H. & Moss; some with a mark used by them in files sent from their establishment at Sheffield.

On the part of the claimant, evidence was given that it was the course of business at Sheffield, with W., H. & Moss and others, in cases of consignment, to head the invoices in the manner in this case practised. Evidence also was given from Sheffield, by the manufacturers of the files in question, that they had sold the same to W., H. & Moss, at the prices stated in the invoice, and that was also proved by their clerk. These and other witnesses also proved that similar goods could be purchased at Sheffield by dealers there for cash, at similar prices. It also appeared that W., H. & Moss were not themselves manufacturers directly of the files; that they were dealers in steel; that it was the course of business of persons in their line at Sheffield to deliver steel to the manufacturers of files, which was charged at a cash price; that files were returned to them, made usually out of the same steel, at certain cash prices, and the balance was paid in cash; that the dealers to whom the files were thus returned were not themselves proprietors of the machinery, tools, or establishments where the files were made; that the actual manufacturers were often persons of small credit, whom the dealers would not trust, except with the steel to be paid by manufactured files; that the mark put on files was sometimes that of the maker, sometimes that of the purchaser for sale or exportation.

Mr. Lord, for the claimant, insisted that the house of Wilson, Hawkshurst & Moss were purchasers of the files, and had invoiced them at the purchasing prices; that they were not bound, nor, indeed, under the

law, and the oath to be taken by the importer, warranted, in invoicing them at any other value; that they were not manufacturers; that, even if they might, in a constructive legal sense, be so deemed, yet this was one of those new and nice questions in which, if they erred, it was not evidence of intended fraud; that all their conduct and course was to the contrary.

Mr. Butler, Dist. Atty., insisted that W., H. & Moss were manufacturers, and not purchasers; that they were therefore bound by law to put the current actual value, instead of actual cost, in the invoices; that this was done understandingly, and not by any mistake of fact, and if the mistake was one of law, it was at their peril; that, if this was so, then the naming of Ellison in the invoice as a purchaser tended to mislead the officers of the customs, because, if true, it warranted an entry at the actual cost, when the duties ought to be levied on actual values.

BETTS, District Judge, charged the jury that the offence here proceeded for was a falsehood in the invoice, produced upon entry, with intent to defraud or evade the revenue. The falsity was alleged to exist in the heading of the invoices, and in the prices at which the articles were there valued; the intent, that of evading the revenue by passing the goods at a less rate of duty than they were in truth and by law subject to. That the invoices, it is true, were not controlling on the customhouse officers, but they might, nevertheless, raise the value, and charge the duties accordingly. But the invoice was one circumstance or document which the government exacted upon entry, for the information of its officers, and required it to be true, on penalty of forfeiting the goods. The forfeiture is not because the government is actually defrauded, but because the invoice has been falsely made to this effect.

The law contemplates two classes of importers,—purchasers, and those who procure otherwise than by purchase. The one class are to represent the actual cost, the other the actual value, in their invoices. If the actual cost be truly stated by the purchaser importing, then, although the valuation may be raised for the purpose of imposing the duty, yet the goods could not be for this cause forfeited. But, if the importer be not a purchaser, his invoice must show the actual market value, whatever may have been its cost of manufacture. Then, were W., H. & Moss, who are here to be regarded as importers, manufacturers or purchasers? If they were purchasers, then the evidence is clear that the invoice contains the actual cost, and there is no difficulty in the case. If they were manufacturers of these goods, then, if the invoice does not show the actual value, the goods are not properly invoiced. Whether manufacturers or not, is a mixed question for the jury, under the advice of the court as to what constitutes a manufacturer.

"Manufacturer" is a word not perfectly limited in its meaning. The artisan, by whose skill and labor the raw material is formed into the article prepared for sale or use, is, in a strict sense, the manufacturer. But he who controls, directs, or superintends the artisans, and the general head or proprietor of the establishment, is a manufacturer also, although he may not conduct any of the mechanical processes, nor indeed be acquainted with them. So, too, there are persons in a mixed position, being dealers in the raw material, selling all the articles made from it, and manufacturing some of the articles they deal in. In relation to the present case, if W., H. & Moss were originally proprietors of the material delivered to the file maker, and the latter was to return to him the same material in its manufactured shape, according to their orders, so that the material did not cease to belong to them, then they were manufacturers, although the mode of conducting the business was by charging the steel and crediting the files in cash, and paying cash for the balance. But if, when the steel was delivered to the file makers, it belonged to the latter, so that they might, at their pleasure, either sell it, or sell the files made from it, to whom they pleased, then W., H. & Moss would be rather purchasers than manufacturers of the files.

If the jury should, on the evidence, find that they were manufacturers, then the next question would be, whether the price in the invoice was the actual market value at Sheffield at the time; such as any ordinary purchaser would have to pay for the article in the market there. On this the evidence was conflicting, and was for the jury to consider. But if it was not the actual value, still the claimant contends that, if W., H. & Moss supposed that they were purchasers, and, under this supposition, inserted the actual cost, instead of actual value, they were merely mistaken in the law, and not guilty of an intent to defraud or evade the revenue. The court, however, is of opinion that this mistake of the law cannot be looked to in their exculpation. They are bound to know the law, and if, without mistake of fact, they make an entry in their invoice contrary to the law, it must be regarded as intentional; and, if tending to evade or defraud the revenue, that intent must be ascribed to the false invoice. The jury are not, in this particular, to inquire as to the actual private intent to defraud the revenue, but whether the importers were in such a relation of manufacturers as bound them to enter the goods, not at actual cost, but at actual value.

As to the representation of Joseph Ellison being the purchaser, instead of Wilson,

Hawkshurst & Moss, if that was false, and with intent to evade or defraud the revenue, then that was also a ground of forfeiture.

The claimant's counsel excepted to so much of the charge as related to the intent under mistake of law.

The jury found a verdict for the claimant of the goods.